UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NOS. 22-23962-CIV-ALTMAN
21-20447-CR-ALTMAN

**FRANCISCO JAVIER ORREGO GOEZ**,

    *Movant*,

v.

**UNITED STATES OF AMERICA**,

    *Respondent.*

_____/

**ORDER**

Our Movant, Francisco Javier Orrego Goez, is serving a 60-month sentence in the custody of the Bureau of Prisons for the crime of possessing a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A). *See* Judgment, *United States v. Orrego Goez*, No. 21-20447-CR (S.D. Fla. Apr. 5, 2022), ECF No. 45 at 1–2. Orrego Goez has since filed a motion to vacate his conviction under 28 U.S.C. § 2255, arguing that § 924(c)—the statute he was convicted of violating—is now unconstitutional in light of the Supreme Court's decision in *New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S. Ct. 2111 (2022). *See* Motion [ECF No. 1] at 4 ("[*Bruen*] represents a fundamental shift in 2nd Amendment evaluation which invalidates 18 U.S.C. § 924(c) for drugs.").

Rule 4(b) of the Rules Governing Section 2255 Cases authorizes a district court to summarily deny a § 2255 motion, even without a response from the Government, "if it plainly appears from the face of the motion and any annexed exhibits and the prior proceedings in the case that the movant is not entitled to relief." *Broadwater v. United States*, 292 F.3d 1302, 1303 (11th Cir. 2002) (cleaned up). The Supreme Court's decision in *Bruen* didn't undermine the constitutionality of § 924(c) as applied to defendants (like Orrego Goez) who've committed drug trafficking offenses—and multiple district

courts around the country have said so. Because Orrego Goez's argument is facially unviable, we **DENY** his Motion to Vacate.

## THE FACTS

A federal grand jury charged Orrego Goez with committing three crimes: conspiracy to distribute cocaine (Count 1); possession with intent to distribute cocaine (Count 2); and possession of a firearm in furtherance of a drug trafficking crime (Count 3). *See* Indictment, *United States v. Orrego Goez*, No. 21-20447-CR (S.D. Fla. Sept. 1, 2021), ECF No. 8 at 1–2. Shortly after the Indictment was returned, Orrego Goez pled guilty to Count 3, and the Government agreed to dismiss Counts 1 and 2. *See* Plea Agreement, *United States v. Orrego Goez*, No. 21-20447-CR (S.D. Fla. Jan. 26, 2022), ECF No. 32 at 1. In the course of pleading guilty, Orrego Goez admitted that he possessed a firearm in furtherance of his attempt to sell five ounces of cocaine to an undercover agent. *See* Factual Proffer, *United States v. Orrego Goez*, No. 21-20447-CR (S.D. Fla. Jan. 26, 2022), ECF No. 33 at 3–4. On April 5, 2022, a federal judge sentenced Orrego Goez to 60 months in prison—the mandatory minimum penalty laid out in § 924(c). *See* Judgment, *United States v. Orrego Goez*, No. 21-20447-CR (S.D. Fla. Apr. 5, 2022), ECF No. 45 at 2.

## THE LAW

Because collateral review isn't a substitute for a direct appeal, a movant can proceed under § 2255 only in extremely limited circumstances. As relevant here, a prisoner is entitled to relief under § 2255 if (1) "the sentence was imposed in violation of the Constitution or laws of the United States," (2) "the court was without jurisdiction to impose such sentence," (3) "the sentence was in excess of the maximum authorized by law," or (4) the sentence is "otherwise subject to collateral attack." 28 U.S.C. § 2255(a); *accord McKay v. United States*, 657 F.3d 1190, 1194 n.8 (11th Cir. 2011). In other words, "relief under § 2255 is reserved for transgressions of constitutional rights and for that narrow compass of other injuries that could not have been raised on direct appeal and would, if condoned,

result in a complete miscarriage of justice." *Richards v. United States*, 837 F.2d 965, 966 (11th Cir. 1988) (cleaned up); *see also United States v. Frady*, 456 U.S. 152, 165 (1982) ("[W]e have long and consistently affirmed that a collateral challenge will not do service for an appeal."). If a court grants a § 2255 claim, the court "shall vacate and set aside the judgment and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b). The movant bears the burden of proving his § 2255 claim. *See Beeman v. United States*, 871 F.3d 1215, 1222 (11th Cir. 2017) ("We rest our conclusion that a § 2255 movant must prove his [claim] on a long line of authority holding that a § 2255 movant bears the burden to prove the claims in his § 2255 motion." (cleaned up)), *cert. denied*, 139 S. Ct. 1168 (2019).

## ANALYSIS

In his § 2255, Orrego Goez advances only one ground for relief: that his conviction under § 924(c) is unconstitutional under *Bruen*. In Orrego Goez's view, *Bruen* "changed the applicable framework for analyzing firearm regulations under the 2nd Amendment." Motion at 13. And, Orrego Goez insists, after applying *Bruen*'s "test" to § 924(c), we should find "no historical analog from the 18th Century concerning regulating firearm possession in relation to drug offenses[.]" *Id.* at 15. In the absence of that historical analog, Orrego Goez says, the Second Amendment forbids the Government from criminalizing his possession of a firearm in furtherance of a drug trafficking offense. *Ibid.*[1] We disagree.

The Second and Fourteenth Amendments to the U.S. Constitution "protect an individual right to keep and bear arms for self-defense." *Bruen*, 142 S. Ct. at 2125; *see also Dist. of Columbia v. Heller*, 554 U.S. 570, 595 (2008) ("There seems to us no doubt, on the basis of both text and history, that the Second Amendment conferred an individual right to keep and bear arms."). In deciding whether the

---

[1] Orrego Goez has thus asserted an as-applied challenge. *See DA Mortg., Inc. v. City of Miami Beach*, 486 F.3d 1254, 1262 (11th Cir. 2007) ("Where plaintiffs challenge the validity of a statute because they seek to vindicate their own rights, however, the challenge is 'as-applied.'").

3

Constitution "protect[s] an individual's right to carry a handgun for self-defense outside the home," *Bruen*, 142 S. Ct. at 2122, the Supreme Court adopted a straightforward test: "When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.* at 2129–30.

Of course, the Supreme Court also recognized that "the Constitution can, and must, apply to circumstances beyond those the Founders specifically anticipated." *Bruen*, 142 S. Ct. at 2132. When confronted with "modern regulations that were unimaginable at the founding," courts must determine whether the modern regulation is "relevantly similar" to a "historical regulation" that was consistent with the "historically fixed meaning" of the Second Amendment. *Ibid.* "[W]hether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether the burden is comparably justified are 'central' considerations when engaging in an analogical inquiry." *Id.* at 2133 (citing *McDonald v. City of Chicago*, 561 U.S. 742, 767 (2010)).

The dispositive question here, then, is whether § 924(c)'s prohibition against the possession of a firearm "in furtherance of [a drug trafficking crime]" comports with the "historical tradition of firearm regulation." Orrego Goez insists that it doesn't. As he sees it, there's "no historical analog from the 18th Century concerning regulating firearm possession in relation to drug offenses that Orrego is aware of." Motion at 15. And (he adds) "[l]egislatures did not restrict gun possession in relation to drug crimes until the 20th Century[.]" *Ibid.* Although Orrego Goez appears to concede that § 924(c) *remains* constitutional to the extent it criminalizes the possession of a firearm in furtherance of a "crime of violence," he maintains that "drug trafficking is not a crime of violence" and that there's no historical basis for restricting the possession of firearms in the scenario we have here. *Id.* at 16.[2]

---

[2] Orrego Goez didn't raise this argument on appeal. He, in fact, didn't appeal at all. To properly preserve this claim for collateral review, though, Orrego Goez had to assert it on direct appeal; otherwise, the claim becomes procedurally defaulted. *See Seabrooks v. United States*, 32 F.4th 1375, 1384

4

We disagree with Orrego Goez's contention that, for constitutional purposes, the distinction between a violent crime and a non-violent crime matters. On the contrary, we find that the Second Amendment authorizes the Government to regulate the possession of firearms by those who use them to further an *illegal* act. The Supreme Court has repeatedly confirmed that the Second Amendment protects only *law-abiding citizens*. *See Heller*, 554 U.S. at 595 ("Thus, we do not read the Second Amendment to protect the right of citizens to carry arms for *any sort* of confrontation, just as we do not read the First Amendment to protect the right of citizens to speak for *any purpose*." (emphasis in original)); *id.* at 626 ("[N]othing in our opinion should be taken to cast doubt on longstanding

---

(11th Cir. 2022) ("If a defendant fails to raise an issue on direct appeal, he may not present the issue in a § 2255 proceeding unless his procedural default is excused."). A movant may excuse his procedural default by showing *either* (1) "cause for not raising the claim of error on direct appeal and actual prejudice from the alleged error," or (2) that "he is actually innocent [ ] of the crime of conviction." *McKay*, 657 F.3d at 1196 (citing *Lynn v. United States*, 365 F.3d 1225, 1234 (11th Cir. 2004)). The "cause and prejudice" exception requires the movant to show (1) "some objective factor external to the defense [that] prevented [movant] or his counsel from raising his claims on direct appeal," *Lynn*, 365 F.3d at 1235, and (2) that the failure to raise this claim on appeal "worked to [the movant's] actual and substantial disadvantage, infecting his [conviction] with error of constitutional dimensions," *Ward v. Hall*, 592 F.3d 1144, 1178 (11th Cir. 2010) (citing *Frady*, 456 U.S. at 170).

Of course, a movant can show "cause" for his procedural default by demonstrating that his claim "is so novel that its legal basis [wa]s not reasonably available to counsel[.]" *Howard v. United States*, 374 F.3d 1068, 1072 (11th Cir. 2004). The Eleventh Circuit has identified "three circumstances in which novelty might constitute cause for defaulting on a claim": (1) "the Supreme Court explicitly overrules one of [the Circuit's] precedents"; (2) the Supreme Court "overturns a 'longstanding and widespread practice to which the Supreme Court has not spoken, but which a near-unanimous body of lower court authority has expressly approved'"; and (3) the Supreme Court "disapproves of a 'practice [which it] arguably has sanctioned in prior cases.'" *Granda v. United States*, 990 F.3d 1272, 1286 (11th Cir. 2021) (quoting *Reed v. Ross*, 468 U.S. 1, 17 (1984)).

Orrego Goez's claim *might* fall into this second "circumstance" since *Bruen* expressly abrogated a "longstanding and widespread practice" that had been adopted by nearly every circuit in the country: a "'two-step' framework for analyzing Second Amendment challenges that combines history with means-end scrutiny." *Bruen*, 142 S. Ct. at 2125; *see also, e.g.*, *Nat. Rifle Ass'n of Am., Inc. v. Swearingen*, 545 F. Supp. 3d 1247, 1253 (N.D. Fla. 2021) (Walker, C.J.) (citing *The Federal Circuits' Second Amendment Doctrines*, 61 ST. LOUIS U. L.J. 193, 212 (2017)) (explaining that "[a]lmost every circuit"—including the Second, Third, Fourth, Fifth, Sixth, Seventh, Ninth, Tenth, Eleventh, and D.C. Circuits—had "adopted a two-step test for evaluating Second Amendment claims"). But we needn't decide today whether the novelty of Orrego Goez's claim excuses his procedural default because we conclude that his claim fails on the merits. *See Dallas v. Warden*, 964 F.3d 1285, 1307 (11th Cir. 2020) ("[A] federal court may skip over the procedural default analysis if a claim would fail on the merits in any event.").

5

prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings[.]"); *Bruen*, 142 S. Ct. at 2156 ("New York's proper-cause requirement violates the Fourteenth Amendment in that it prevents *law-abiding citizens* with *ordinary self-defense needs* from exercising their right to keep and bear arms." (emphasis added)); *id.* at 2162 (Kavanaugh, J., concurring) ("[T]he Second Amendment 'is neither a regulatory straightjacket nor a regulatory blank check.' Properly interpreted, the Second Amendment allows a 'variety' of gun regulations."). Put another way, the Second Amendment doesn't protect people who possess firearms to further their criminal enterprises. *See United States v. Jimenez-Shilon*, 34 F.4th 1042, 1046 (11th Cir. 2022) ("And as both the Supreme Court and this Court have observed, even individuals who are indisputably part of 'the people,' such as dangerous felons and those suffering from mental illness, might not partake of that pre-existing right and, therefore, may be prohibited from possessing firearms without offending the Second Amendment."); *United States v. Collette*, 2022 WL 4476790, at *5 (W.D. Tex. Sept. 25, 2022) (Counts, J.) ("*Heller* described Second Amendment rights as inuring to 'law-abiding, responsible citizens' and 'all Americans.' Therefore, because undocumented immigrants are not law-abiding citizens, Americans, or members of the political community, they could be excluded from 'the people.'" (citing *United States v. Portillo-Munoz*, 643 F.3d 437, 442 (5th Cir. 2011))).

In our view, Orrego Goez is just slicing too finely when he asks us to find, in the eighteenth century, a law that *specifically* proscribed the possession of a firearm in furtherance of a drug trafficking crime. *Cf. Bruen*, 142 S. Ct. at 2132 ("And because everything is similar in infinite ways to everything else, one needs some metric enabling the analogizer to assess which similarities are important and which are not." (cleaned up)); *see also Fried v. Garland*, 2022 WL 16731233, at *6 (N.D. Fla. Nov. 4, 2022) (Winsor, J.) ("Plaintiffs also argue that even if they are not technically 'law abiding,' the government 'would have to show an analogous situation in or around 1791 or 1868 where a person

6

who only took actions for which they could not be criminally punished would be considered not 'law-abiding.' This argument fails not only because Plaintiffs can be prosecuted under the law (if not right now), but also because it demands too much specificity in the historical tradition. The government need only 'identify a well-established and representative historical analogue, not a historical twin.'" (quoting *Bruen*, 142 S. Ct. at 2133)); *Folajtar v. Barr*, 369 F. Supp. 3d 617, 623 (E.D. Pa. 2019) ("Thus, the traditional justifications for excluding felons from Second Amendment protections turn on whether an 'unvirtuous citizen' committed a 'serious crime,' not whether the crime was violent or non-violent."). The more apt "comparable burden" under the Second Amendment is whether there was a "historical regulation" that criminalized the possession of a firearm during the performance of a crime. *See Bruen*, 142 S. Ct. at 2133 ("On the other hand, analogical reasoning requires only that the government identify a well-established and representative historical *analogue*, not a historical *twin*. So even if a modern-day regulation is not a dead ringer for historical precursors, it still may be analogous enough to pass constitutional muster." (emphasis in original)).

And, as every single federal court that has addressed this issue has found—both before and after *Bruen*—"there is a history and tradition of keeping guns away from those engaged in criminal conduct[.]" *Fried*, 2022 WL 16731233, at *5; *see also, e.g.*, *Bruen*, 142 S. Ct. at 2138 n.9 (affirming the constitutionality of firearm "licensing regimes" because they "are designed to ensure only that those bearing arms in the jurisdiction are, in fact, 'law-abiding, responsible citizens'"); *United States v. Yancey*, 621 F.3d 681, 684–85 (7th Cir. 2010) ("[M]ost scholars of the Second Amendment agree that the right to bear arms was tied to the concept of a virtuous citizenry and that, accordingly, the government could disarm 'unvirtuous citizens.'"); *United States v. Bryant*, 711 F.3d 364, 369–70 (2d Cir. 2013) ("Other circuits have addressed arguments similar to those Bryant advances, and they have rejected any contention that the Second Amendment entitles citizens to keep and bear arms 'for *all* self-protection,' given that the Supreme Court has said the purpose of the right is for '*lawful* self-

7

protection.' . . . [W]e hold that the Second Amendment does not protect the *unlawful* purpose of possessing a firearm in furtherance of a drug trafficking crime and that 18 U.S.C. § 924(c) as applied in this case does not violate the Second Amendment." (emphasis in original)); *United States v. Nevens*, 2022 WL 17492196, at *2 (C.D. Cal. Aug. 15, 2022) (Gee, C.J.) ("Defendant is not a law-abiding citizen, and regulations governing *non-law abiding citizens'* use of firearms do not implicate *Bruen* and *Heller*." (emphasis in original)). We now reaffirm that uncontroversial premise: The Second Amendment doesn't protect a person's right to possess a firearm in furtherance of a felony offense (like drug trafficking).

Indeed, no court has disputed the straightforward proposition that "persons who have committed serious crimes forfeit the right to possess firearms much the way they forfeit other civil liberties, including fundamental constitutional rights." *Binderup v. Att'y Gen., U.S. of Am.*, 836 F.3d 336, 349 (3d Cir. 2016) (en banc), *abrogated on other grounds by Bruen*, 142 S. Ct. at 2111; *see also Kanter v. Barr*, 919 F.3d 437, 454 (7th Cir. 2019) (Barrett, J., dissenting) ("The historical evidence does, however, support a different proposition: that the legislature may disarm those who have demonstrated a proclivity for violence or whose possession of guns would otherwise threaten the public safety."). Although Orrego Goez argues that his possession of a firearm was not inherently violent or dangerous, *see* Motion at 16 ("This places Orrego's conduct of possession an unloaded firearm in his truck's center console (which denotes that the firearm was not intended to be used during the drug trafficking offense) within the scope of protected conduct under the Second Amendment[.]"), we disagree. Guns and drugs "are a dangerous combination"—as courts across the country have consistently found. *Smith v. United States*, 508 U.S. 223, 240 (1993) ("When Congress enacted the current version of § 924(c)(1), it was no doubt aware that guns and drugs are a dangerous combination. . . . [They] create[ ] a grave possibility of violence and death[.]"); *United States v. Timmons*, 283 F.3d 1246, 1251 (11th Cir. 2002) ("If the gun did not facilitate the drug offense, it certainly had the 'potential of facilitating' the

8

drug offense. . . . [T]he purpose of [§ 924(c)] is to combat the dangerous combination of drugs and guns[.]"); *United States v. Flores*, 149 F.3d 1272, 1280 (10th Cir. 1998) ("Although in many cases the weapon will be involved with some sort of illegal transaction, it is not necessary for the Government to show that drugs and money changed hands near the weapon; the weapon may simply serve as a potentially deadly means of protecting the trafficker's goods, thereby increasing the danger of violence."); *United States v. Lomax*, 293 F.3d 701, 705 (4th Cir. 2002) ("For example, a gun could provide a defense against someone trying to steal drugs or drug profits, or it might lessen the chance that a robbery would even be attempted. Additionally, a gun might enable a drug trafficker to ensure that he collects during a drug deal. And a gun could serve as protection in the event that a deal turns sour. Or it might prevent a transaction from turning sour in the first place. Furthermore, a firearm could help a drug trafficker defend his turf by deterring others from operating in the same area." (citing *United States v. Ceballos-Torres*, 218 F.3d 409, 412 (5th Cir. 2000))); *United States v. Castano*, 543 F.3d 826, 830 (6th Cir. 2008) ("[I]ndividuals engaged in drug trafficking frequently carry firearms because such individuals commonly feel the need to protect themselves and because they sometimes carry large amounts of money or large amounts of drugs and they feel the need to protect themselves or their money or drugs. . . . [T]ypically if somebody is selling drug or buying drugs it's a dangerous situation.").

We note, too, that at least four district courts and one circuit court have rejected the argument Orrego Goez has advanced here in almost identical circumstances. In *United States v. Ingram*, 2022 WL 3691350 (D.S.C. Aug. 25, 2022) (Lewis, J.), for instance, the defendant—much like Orrego Goez—claimed that the conduct prohibited by § 924(c) (*i.e.*, the possession of a firearm in furtherance of a drug trafficking offense) was "protected by the plain text of the Second Amendment and [was] historically unregulated." *Id.* at *1. The district court rejected this argument for the now-familiar reason that the Second Amendment doesn't protect "the use of firearms by non-law-abiding citizens for

9

unlawful purposes[.]" *Id.* at *3. Likewise, in *United States v. Snead*, the Western District of Virginia found that "the Second Amendment protects the conduct of law-abiding citizens, and provides no constitutional sanctuary for those who use firearms to commit crimes. . . . Plainly, the illegal context of Snead's alleged possession takes this case outside of the ambit of *Bruen*." 2022 WL 16534278, at *5 (W.D. Va. Oct. 28, 2022) (Urbanski, C.J.); *see also United States v. Garrett*, 2023 WL 157961, at *3 (N.D. Ill. Jan. 11, 2023) (Bucklo, J.) ("[Courts] have examined the constitutionality, post-*Bruen*, of § 924(c)(1)(A) banning firearms possession in furtherance of a drug trafficking offense, but those that have done so have upheld the statute. Nothing in defendant's submissions persuades me to depart from the conclusions of these courts." (cleaned up)); *United States v. Isaac*, 2023 WL 1415597, at *6 (N.D. Ala. Jan. 31, 2023) (Burke, J.) (rejecting a constitutional challenge to § 924(c)(1)(A) because "[t]he *Bruen* Court explained that *Heller* does not support the two-step means-ends scrutiny applied by the circuit courts, but it did not alter *Heller*'s holding that the Second Amendment protects the rights of *law-abiding* citizens" (emphasis in original & cleaned up)).

And, in *United States v. Burgess*, the Sixth Circuit (albeit in an unpublished opinion) flatly rejected a defendant's constitutional challenge to § 924(c) on direct appeal. *See* 2023 WL 179886, at *5 (6th Cir. Jan. 13, 2023) ("At [the defendant's] plea hearing he answered 'yes' to the question whether he had possessed firearms in furtherance of his drug crimes. . . . So, having admitted to conduct 'outside the scope of the Second Amendment right as historically understood,' Joseph cannot seek refuge in *Bruen*." (quoting *United States v. Greeno*, 679 F.3d 510, 520 (6th Cir. 2012), *abrogated on other grounds by Bruen*, 142 S. Ct. at 2111)).

If we followed Orrego Goez's argument to its logical conclusion, we'd have to apply Second Amendment protection to any criminal who possesses a firearm in furtherance of a non-violent crime. *See* Motion at 16 ("Therefore, statutorily, drug trafficking is not a crime of violence. This places Orrego's conduct of possessing an unloaded firearm in his truck's center console within the scope of

10

protected conduct under the Second Amendment[.]" (cleaned up)). But that dramatic extension of Second Amendment protection would fly in the face of "the Nation's historical tradition of firearm regulation," which has only ever extended the "right to bear arms" to "law-abiding" citizens. *United States v. Young*, 2022 WL 16829260, at *8 & n.2 (W.D. Pa. Nov. 7, 2022) ("Since the June 23, 2022, Decision in *Bruen*, virtually all of the district courts to have considered facial challenges to the constitutionality of 18 U.S.C. Sections 922(g), 923, and 924, have uniformly upheld their constitutionality."). Because § 924(c)'s prohibition against the possession of a firearm in furtherance of a drug trafficking crime is consistent with historical practice and precedent, we reject Orrego Goez's as-applied challenge and **DENY** his Motion.

## EVIDENTIARY HEARING

Because Orrego Goez's argument fails as a matter of law, we see no need to hold an evidentiary hearing in this case. *See Shriro v. Landrigan*, 550 U.S. 465, 474 (2007) ("[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing.").

## CERTIFICATE OF APPEALABILITY

A COA is appropriate only where the movant makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To deserve a COA, therefore, the movant must show that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Because no "jurists of reason" would find our resolution of Orrego Goez's Motion "debatable" or wrong, Orrego Goez isn't entitled to a COA.

\*\*\*

Having carefully reviewed the record and the governing law, we hereby **ORDER AND ADJUDGE** that the Motion [ECF No. 1] is **DENIED**. Any request for a COA is **DENIED**. Any pending motions, including any requests for an evidentiary hearing, are **DENIED**. All deadlines are

**TERMINATED**. The Clerk of Court shall **CLOSE** this case.

**DONE AND ORDERED** in the Southern District of Florida on February 16, 2023.

**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:    Francisco Jaiver Orrego Goez, *pro se*